IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEM ACQUISITIONCO, LLC and GEM REALTY FUND IV, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> SORENSON GROUP HOLDINGS, LLC, JAMES L. SORENSON, JOSEPH SORENSON, TIMOTHY FENTON, and DOES 1-25, <br><br> Defendants. | No. C 09-1484 SI <br><br> **ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE and DENYING PLAINTIFFS' MOTION TO ENJOIN PROSECUTION OF LATER-FILED CASE** |

Defendants have filed a motion to transfer venue to the District of Utah and plaintiffs have filed a motion to enjoin prosecution of the later-filed Utah case. The motions are scheduled for hearing on June 5, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES defendants' motion and DENIES plaintiffs' motion.

**BACKGROUND**

On March 3, 2009, plaintiffs Gem Acquisitionco, LLC and Gem Realty Fund IV, L.P. (collectively, "Gem") filed a complaint in San Francisco Superior Court alleging claims for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment, and seeking declaratory judgment against defendants Sorenson Group Holdings, LLC, James L. Sorenson, Joseph Sorenson and Timothy Fenton (collectively, "Sorenson"). Sorenson

invoked diversity jurisdiction and removed the case to this Court on April 3, 2009.

This dispute arises out of an agreement the parties entered into on February 9, 2009. In January 2009, the Federal Deposit Insurance Corporation ("FDIC"), acting in its capacity as the receiver for two failed banks, announced the public auction of a pool of commercial construction loans. Only qualified bidders were permitted to participate in the auction. Gem is a qualified bidder, while Sorenson is not. The complaint alleges that Gem and Sorenson reached an agreement whereby they would jointly bid on the construction loans. Complaint ¶ 11. The agreement provided that Gem, as the qualified bidder, would put up a $100,000 deposit with the investment bank handling the bidding process. *Id.* ¶ 13. If the FDIC identified the Gem/Sorenson bid as the winning bidder, Sorenson would provide all necessary funding to acquire the loans and Gem would have the option to purchase a one-half interest in the loans or to receive a $600,000 payment for its role in the bid. *Id.* ¶ 14. The agreement required Sorenson to put funds in escrow, including $4 million to be used in the event the Gem/Sorenson bid was successful and $600,000 to be paid to Gem should it decide not to exercise its option to purchase an interest in the loans. *Id.* ¶ 15.

Gem Acquisitionco and Gem Realty Fund, IV are Chicago-based investment firms. Decl. of Jonathan C. Romick in Supp. of Pls. Opp. to Defs. Mot. to Transfer ("Romick Decl.") ¶ 4. Sorenson is a Utah limited liability company with its principal place of business in Salt Lake City, Utah. Sorenson is a small company that consists of its three managing partners, who are the individual defendants in this case. Decl. of Mark Staples in Supp. of Defs. Mot. to Transfer Venue ("Staples Decl.") ¶ 3. It has no employees and no offices outside Utah. *Id.* The individual defendants are all residents of Utah. The only business that it has conducted so far are the transactions at issue in this case. *Id.* None of the defendants left Utah in conjunction with any of the negotiations. *Id.* ¶ 6.

The Gem-Sorenson negotiations were initiated by David Beckham, a third party in Arizona. Romick Decl. ¶ 6. Beckham and his associate, Jack Rasor, facilitated the initial contact between Sorenson and Gem through phone calls. *Id.* Gem representatives participated in the phone calls from their offices in Chicago. *Id.* ¶ 9. Sorenson participated in the phone calls from Utah. Staples Decl. ¶ 6. After a few days of preliminary discussions, Gem and Sorenson referred the matter to their attorneys. Sorenson requested that it be represented by a particular attorney in the San Francisco office of the law

2

firm Kirkland & Ellis. Complaint ¶¶ 10, 11. Gem therefore retained counsel based in East Palo Alto, California. *Id.* ¶ 13. The lawyers conducted negotiations in California from February 5 to 9. *Id.* ¶ 14. By February 9, they reached two agreements, one pertaining to the FDIC bid and a second pertaining to the escrow agreement. *Id.* ¶ 15. On February 9, the parties' lawyers exchanged and delivered the executed agreements in California over e-mail. *Id.* ¶ 15. The parties agreed that a particular escrow agent at First American Title Insurance Company in San Francisco would hold the escrow funds. *Id.* ¶ 19. The escrow agreement provides, in relevant part:

> In the event that Escrow Agent shall receive any conflicting instructions from GEM and Sorenson or shall fail to timely receive instructions from any party required hereunder . . . Escrow Agent (at the sole cost and expense of GEM and Sorenson) shall be entitled to commence an appropriate judicial action for instructions and/or to interplead the Holdback and interest earned thereon and each of GEM and Sorenson consent to jurisdiction and venue of such action in the San Francisco Superior Court and agree to accept service of such action by mail or in person at the addresses for notice and in the manner set forth in the Agreement.

Romick Decl. at ex. 3 ¶ 3(c).

On February 10, 2009, Gem submitted a bid to the FDIC for $40,150,000. Complaint ¶ 17. About two days later, Sorenson told Gem that Sorenson had been contacted by a third-party bidder, Diversified Business Strategies ("DBS"). *Id.* ¶ 18. Sorenson told Gem that DBS had claimed to be the high bidder and had sought financial backing from Sorenson so that DBS could close the deal and acquire the loans. *Id.* ¶ 19. Gem objected to Sorenson's proposal for Sorenson to provide financial support to DBS. *Id.* ¶ 19. Sorenson assured Gem that it would terminate its discussions with DBS. *Id.* ¶ 20. Gem subsequently learned that Sorenson continued to negotiate with DBS in secret and provided DBS the financial backing it needed to become the successful bidder. *Id.* DBS's high bid was $41 million. *Id.* ¶ 23. Sorenson entered into an agreement with DBS whereby Sorenson would acquire all but a small portion of the loan portfolio. *Id.* DBS is a Utah LLC with its principal place of business in Utah. All negotiations between DBS and Sorenson took place in Utah. Staples Decl. ¶ 7. DBS and Sorenson executed an agreement in Utah on February 17, 2009. *Id.*

On April 7, 2009, Sorenson filed an action against Gem in the District of Utah, *Sorenson Group Holdings v. Gem Acquisition*, C 09-293 ("the Utah case"), seeking declaratory judgment and alleging that Gem breached the parties' agreement by failing to execute the joint escrow instructions. *See* Decl.

3

of Kenneth A. Kuwayti in Supp. of Defs. Mot. to Transfer ("Kuwayti Decl."), ex. 8. The Utah case is assigned to the Honorable David Sam.

Now before the Court are defendants' motion to transfer venue to the District of Utah pursuant to 28 U.S.C. § 1404(a) and plaintiffs' motion to enjoin defendants from prosecuting the Utah case.

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish: "that venue is proper in the transferor district; that the transferee district is one where the action might have been brought; and that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Once venue is determined to be proper in both districts, courts use the following factors to evaluate whether a transfer of venue would be more convenient to the parties and the witnesses and would promote the interests of justice: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). The existence of a forum selection clause, along with the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis." *Jones,* 211 F.3d at 498-99.

4

**DISCUSSION**

**1.     Defendants' Motion to Transfer**

The parties appear to agree that venue would be proper in either this district or in the District of Utah. The key dispute, therefore, is whether the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.

### A.     Plaintiffs' Choice of Forum

The parties dispute whether Gem's choice of this forum is entitled to any deference. "The general rule is that a plaintiff's choice of forum is afforded substantial weight." *Bowman*, 157 F. Supp. 2d at 1106. Where a plaintiff does not reside in the forum, however, courts afford the plaintiff's choice considerably less weight. *See* Schwarzer et al., *Federal Civil Procedure Before Trial* § 4:761 (2008) (citing *New Image, Inc. v. Travelers Indem. Co.*, 536 F. Supp. 58, 59 (E.D. Pa. 1981); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). Courts also give the plaintiff's choice of forum less weight if the forum lacks "lacks any significant contact with the activities alleged in the complaint . . . ." *Federal Procedure* § 4:763 (citing *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. De. 1987); *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008)).

Here, Gem does not reside in California. Many of the activities alleged in the complaint occurred here, however, as the attorneys performed the final contract negotiations in California and the parties' chosen escrow agent is located is in San Francisco. The Court will therefore afford Gem's choice of this forum some deference.

### B.     Convenience of Parties

Sorenson argues that Utah is a more convenient forum as all defendants are located in Utah. It does not appear that Gem has offices in California, but it can be inferred that this forum is more convenient for Gem as it chose to initiate the case here. This factor is therefore neutral.

### C.     Convenience of Witnesses

This case involves a cast of characters that are scattered across the country. All defendants are

5

located in Utah. DBS is located in Utah. Gem's principal place of business is Chicago. Beckham and Rasor, who initiated contact between Sorenson and Gem, are in Arizona. The FDIC is in Washington, D.C. The law firms that negotiated the Gem-Sorenson agreement and the escrow agreement are in California. The escrow agent, First American Title Insurance Company, is in San Francisco. The parties have also identified the following potential third-party witnesses:

- Universal Equity Group (which, according to Gem, made an unsuccessful bid the loan portfolio with Sorenson before the Gen-Sorenson negotiations were initiated) and Robert Banovac / Rightpath Limited Development Group (Gem contends that this entity was also involved in the initial bid with Sorenson), in Arizona. *See* Romick Decl. ¶ 27.

- SilverLeaf Financial and Real Capital Funding, in Utah. Gem apparently served subpoenas on these entities, as well as on DBS, after initiating this case in San Francisco Superior Court. Kuwayti Decl., ex. 6.

- Ball Ventures, LLC, in Idaho. Gem contends that this entity communicated with Sorenson about financing a bid. Romick Decl. ¶ 28.

- Keefe, Bruyette & Woods (the investment firm hired by the FDIC to handle the public auction), in New York.

While third-party witnesses are located in various states, it appears from Gem's complaint that the most important of these witnesses will be DBS, as this is the entity with which Sorenson purportedly breached the Sorenson-Gem agreement, and Beckham and Rasor, as Gem claims that these individuals have information about the Sorenson-DBS negotiations, *see* Romick Decl. ¶ 27.

The parties also discuss the availability of compulsory process for this Court to secure the attendance of witnesses. Sorenson points out that this Court does not have subpoena power over DBS and that Sorenson cannot guarantee its appearance at trial as it is a third party in this case. Gem responds that DBS will likely appear voluntarily, but does not explain its basis for this argument. Gem also argues that the use of deposition testimony at trial is inevitable because witnesses are located in dispersed locations. Although the Court agrees with Gem on this latter point, the availability of deposition testimony is not a strong factor as it is present in every case.

In sum, the Court agrees with Sorenson that the location of DBS and the availability of compulsory process weigh slightly in favor of transferring the case to Utah.

#### D. Ease of Access to Evidence

Sorenson argues that this factor favors transfer because the electronic and physical documents pertaining to defendants, SilverLeaf, and DBS are located in Utah. Gem points out that just as witnesses are located across the country, so too is documentary evidence located in various places. In addition, Gem argues that much of this evidence is likely stored in electronic format and will not be difficult to access in California. Gem also notes that electronic and physical documents relating to the contract negotiations, which are the central issue in this case, are more likely to be in California, where the Gem-Sorenson agreement and escrow agreement were negotiated and delivered. The Court finds that this factor is neutral.

#### E. Familiarity of Each Forum with the Applicable Law

Sorenson argues that this factor is neutral as all claims in this case arise from the Gem-Sorenson agreement, and that agreement is governed by Delaware law. Gem responds that the escrow agreement, which is governed by California law, *see* Romnick Decl. ex. 3 ¶ 5, is also at issue. In its third cause of action, for breach of the implied covenant of good faith and fair dealing, Gem alleges that Sorenson failed to act in good faith in performing its duties under both the Gem-Sorenson agreement and the escrow agreement. *See* Complaint ¶ 35. Gem also seeks declaratory relief in conjunction with the escrow agreement. *See id.* ¶ 39. Thus, while it appears that the central dispute in this case pertains to the Gem-Sorenson agreement, the escrow agreement is also implicated. While this Court has no doubt that a district court in Utah is well equipped to address any issues of California law presented in this case, it is generally presumed that federal judges are more familiar with the governing laws of the states in which they sit. *See Van Dusen v. Barrack*, 376 U.S. 612, 644 (1964). This factor therefore weighs slightly against transfer.

#### F. Forum Selection Clause

Gem argues that the parties have consented to California as a forum over any dispute pertaining to the escrow funds. According to Gem, the escrow agreement contains a forum-selection clause designating San Francisco Superior Court as the venue for any dispute arising out of the escrow funds.

7

In fact, the escrow agreement provides that if the escrow agent initiates an action in San Francisco Superior Court, both parties consent to the jurisdiction and venue of that court. *See* Romnick Decl., ex. 3 ¶ 3(c) (". . . *Escrow Agent* (at the sole cost and expense of GEM and Sorenson) shall be entitled to commence an appropriate judicial action . . . . and each of GEM and Sorenson consent to jurisdiction and venue of such action in the San Francisco Superior Court . . . .") (emphasis added). The forum selection clause is not implicated in this case as the escrow agent did not initiate this action. This factor is therefore neutral.

### G.      Local Interest in the Controversy

Gem argues that various factors show that California has an interest in this case, including that one of the failed banks whose loans were being auctioned off by the FDIC was in California, that some of the construction loans in the portfolio are in California, and that the parties' agreements were negotiated in substantial part in California. Sorenson responds that Utah has an interest in providing a forum for its residents to litigate local disputes and notes that the case involves "two local Utah businesses and three local Utah businessmen." Def. Mot. at 11.

Sorenson's characterization of the Utah parties and witnesses as "local" is questionable in light of their transactions with parties in multiple states to procure a loan portfolio that involves construction loans outside Utah. On this record, however, it does not appear that Sorenson has significant business ties with any state other than Utah.

As neither side has demonstrated that either state has a more compelling interest in this case than the other, this factor is neutral.

### H.      Court Congestion

Both parties cite evidence about the relative congestion of federal dockets in this district and Utah, none of which is particularly illuminating. Sorenson provides a declaration from a lawyer in Utah who says that based on his experience practicing in Utah and his review of the federal dockets in that district, he would expect this case to be brought to trial in six months. *See* Decl. of Michael C. O'Brien in Supp. of Defs. Mot. to Transfer ¶ 5. Gem cites statistics from the Administrative Office of the Courts

showing that in 2008, the median time for a case to be resolved in this district was 25.5 months, while the median time for resolution in Utah was 29.4 months. *See* Pl. Request for Judicial Notice, exs 3, 4.[1] This difference is not great enough to demonstrate that one district is significantly less busy than another.

In sum, Sorenson's strongest argument for transfer is that third-party witness DBS is located in Utah. In response, Gem argues that this dispute arises from a contract that was in large part negotiated in California, and that Gem's choice of forum is entitled to some deference. As these factors are more ore less equally balanced, the Court finds that Sorenson has not met its burden as moving party in establishing that transfer is warranted. Accordingly, Sorenson's motion for transfer is DENIED.

**2.    Plaintiffs' Motion to Enjoin**

Gem seeks an order enjoining Sorenson from prosecuting the Utah case. Gem argues that Sorenson's claims for declaratory judgment and breach of contract are compulsory counterclaims. *See* Fed. R. Civ. Pro. 13(a)(1) ("A pleading must state as a counterclaim any claim that . . . (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."). Rule 13(a)(1) "bars a party who failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint." *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 854 (9th Cir. 1981).

The Court finds that Judge Sam is best situated to determine the proper disposition of his case in light of this order. Accordingly, the Court DENIES Gem's motion to enjoin prosecution of the Utah case.

**CONCLUSION**

For the foregoing reasons and for good cause shown on the current record, the Court hereby

---

[1] Plaintiffs' request for the Court to take Judicial Notice of statistics published by the Administrative Office of the Court is GRANTED.

DENIES defendants' motion to transfer venue and DENIES plaintiffs' motion to enjoin prosecution of the later-filed case.

**IT IS SO ORDERED.**

Dated: June 6, 2009

SUSAN ILLSTON
United States District Judge