United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEM ACQUISITIONCO, LLC, et al., | No. C 09-01484 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO BIFURCATE** |
| v. | |
| SORENSON GROUP HOLDINGS, LLC, et al., | |
| Defendants. | |

Defendants' motion to bifurcate is currently scheduled for hearing on April 30, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court DENIES defendants' motion.

**BACKGROUND**

This dispute arises out of an agreement between plaintiffs GEM Acquisitionco, LLC and GEM Realty Fund IV, L.P. (collectively "GEM") and defendants Sorenson Group Holdings, LLC, James L. Sorenson, Joseph Sorenson, and Timothy Fenton (collectively "Sorenson"). In January 2009, the Federal Deposit Insurance Corporation ("FDIC"), acting in its capacity as receiver for two failed banks, announced a public auction of a pool of commercial construction loans. Only qualified bidders were permitted to participate in the auction; GEM is a qualified bidder, while Sorenson is not. According to the complaint, GEM and Sorenson agreed to jointly bid on the loan portfolio ("Portfolio"). Complaint ¶ 11. Pursuant to the agreement, GEM, as the qualified bidder, put up a $100,000 deposit with the investment bank handling the bidding process. *Id.* ¶ 13. The parties also entered into an Escrow

Agreement which required Sorenson to place $5,350,000 into escrow – $4,750,000 to be used to acquire the Portfolio in the event the GEM/Sorenson bid was successful, and $600,000 to be paid as a fee to GEM should it decide not to exercise its option to purchase an interest in the loans. The parties agreed that if the GEM/Sorenson bid was unsuccessful, GEM and Sorenson would deliver joint written instructions to the escrow agent to return the escrow funds to Sorenson, and GEM would be entitled to the return of its $100,000 bid deposit. Agreement ¶ 2.

On February 10, 2009, GEM submitted a bid to the FDIC. The next day, the FDIC notified a third-party bidder, Diversified Business Strategies ("DBS"), that it was the successful bidder. DBS contacted Sorenson on February 12, 2009 to solicit Sorenson's financial assistance in closing on the Portfolio. Sorenson and DBS signed an MOU outlining their agreement to jointly acquire the Portfolio. Sorenson's counsel then contacted GEM's counsel to request that GEM execute joint instructions to the escrow agent to release Sorenson's escrow funds because GEM was not the "successful bidder." GEM refused to sign the instructions proposed by Sorenson, accusing Sorenson of breaching the non-circumvention clause of their Agreement, which provides as follows:

> 9. <u>Non-Circumvention</u>. Notwithstanding anything to the contrary contained herein, prior to the one (1) year anniversary of this Agreement neither GEM nor Sorenson nor any Affiliate thereof may purchase or otherwise acquire, directly or indirectly, any interest in the Portfolio or any portion thereof from FDIC except pursuant to this Agreement; provided, however, that if GEM is not the successful bidder, then the foregoing shall not be deemed to prevent either party or its Affiliates from acquiring the Portfolio or any portion thereof from the successful bidder.

Agreement ¶ 9. On February 20, 2009, FDIC sold the Portfolio to a company formed by the Sorenson/DBS joint venture. GEM instituted this action on March 3, 2009, alleging breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

Now before the Court is Sorenson's motion to bifurcate the liability and damages phases of trial.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 42(b), the district court may order separate trials of one or more issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." The court has broad discretion in deciding whether to bifurcate a trial. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). Courts consider several factors in determining whether bifurcation is

2

appropriate, including whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties. *See* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 16:160.4 (2010); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). The party requesting bifurcation has the burden to prove that it is warranted in that particular case. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992).

**DISCUSSION**

Sorenson seeks bifurcation of the liability and damages phases of trial in order to avoid damages-related discovery unless it is found to be liable on GEM's claims of breach. Sorenson contends that the damages-related issues "share no factual overlap" with the liability issues and are "substantially more complex and burdensome." Mot. to Bifurcate at 1. According to Sorenson, the liability issues turn largely on the Court's[1] interpretation of the contractual term "successful bidder," while the damages issues will require complex calculations to determine the value of GEM's option to purchase an interest in the Portfolio. Sorenson concedes that it has already made a substantial production of damages-related documents,[2] but argues that bifurcation may allow it to postpone conducting costly expert discovery, which it asserts will not be necessary to determine liability.

GEM agrees that the liability issues in this case are relatively simple, but asserts that Sorenson overstates the complexity of the damages determination. GEM observes that Sorenson "has itself engaged in ongoing projections of the total amount" of Sorenson's gains from the Portfolio, and states in addition that GEM has already been working with its damages expert for months based on Sorenson's production of damages-related documents. GEM also argues that Sorenson's motion, although styled as a motion to bifurcate, is in effect a motion to stay expert discovery. GEM points out that such motions are disfavored and that the moving party must make "a strong showing why discovery should

---

[1] This case will involve a bench trial.

[2] Sorenson states that of the 125,000 pages of discovery it has produced so far, approximately 90% relate specifically to damages. Robinson Decl. ¶ 2 (Docket No. 88).

3

be denied by showing a particular or specific need for the stay." *White v. E-Loan, Inc.*, No. 05-2080, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006) (quotation marks, citations, and alterations omitted).

Whether Sorenson's motion is construed as a motion to bifurcate or a motion to stay expert discovery, the Court agrees with GEM that the motion must be denied. First, Sorenson has not shown to the Court's satisfaction that the damages issues in this case are so complex as to warrant bifurcation. In the Ninth Circuit, "Bifurcation . . . is the exception rather than the rule of normal trial procedure." *Clark v. I.R.S.*, No. 06-0544, 2009 WL 5698139, at *4 (D. Haw. Nov. 10, 2009) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)). As GEM points out, all of the cases Sorenson cites in favor of bifurcating due to the complexity of calculating damages are patent cases. *See Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc.*, No. 00-549, 2001 WL 501354, at * (C.D. Cal. May 4, 2001); *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308 (E.D.N.C. 1998); *Amylin Pharms., Inc. v. Regents of Univ. of Minn.*, No. 96-2061, 1998 WL 35031973 (S.D. Cal. Jan. 13, 1998). Patent cases often present unique difficulties in calculating damages that are not necessarily applicable to other types of cases. *See Novopharm*, 181 F.R.D. at 311 ("Patent cases are often uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages."). This factor therefore does not weigh in favor of bifurcation.

Sorenson argues next that bifurcation would improve judicial economy and provide a cost savings for the parties by putting off expert discovery unless and until Sorenson is found to be liable. As GEM points out, however, this argument could be made in almost any case, and does not present a strong basis for bifurcation. *See Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 376 (N.D. Ill. 1991) ("The court will not preclude a party from presenting evidence relevant to both liability and damages in the same proceeding merely because that party may not ultimately obtain a favorable judgment."). Additionally, GEM asserts, and Sorenson does not dispute, that GEM has been working with its damages experts for months and has already incurred much of its expert-related expense. Given that the deadline for expert disclosures falls on May 7, 2010 – less than two weeks from the date of this order – the Court can only presume that Sorenson has been working with its experts as well. Accordingly, the Court does not believe that bifurcating trial and extending the deadlines for expert

4

discovery will significantly improve the economy of this case or avoid prejudice to the parties. If anything, GEM may be prejudiced if bifurcation is granted because it will have to expend additional resources to re-engage and continue work with its experts if Sorenson is ultimately found to be liable.[3]

Accordingly, Sorenson's motion to bifurcate the liability and damages phases of trial is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, defendants' motion to bifurcate is DENIED. (Docket No. 87).

**IT IS SO ORDERED.**

Dated: April 27, 2010

SUSAN ILLSTON
United States District Judge

---

[3] Sorenson also asserts that bifurcation will encourage settlement if Sorenson is found to be liable. Although a finding of liability would likely encourage the parties to settle, GEM persuasively points out that bifurcation may actually discourage Sorenson from engaging in settlement discussions prior to the liability trial. The possibility of settlement therefore does not weigh strongly for or against bifurcation.

5